# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 17 B 06666 |
| | ) | |
| BRYCE STIRLEN, | ) | Chapter 7 |
| | ) | |
|         Debtor. | ) | Honorable Janet S. Baer |
| _____ | ) | |
| | ) | |
| DIMITRI KARRAS, | ) | Adversary Case No. 17 A 00424 |
| | ) | |
|         Plaintiff and | ) | |
|         Counter-Defendant, | ) | |
| | ) | |
|         v. | ) | |
| | ) | |
| BRYCE STIRLEN, | ) | |
| | ) | |
|         Defendant and | ) | |
|         Counter-Plaintiff. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Before the Court are the motions filed by plaintiff Dimitri Karras to dismiss the counterclaim of debtor-defendant Bryce Stirlen under subsections (b)(1) and (b)(6) of Rule 12 of the Federal Rules of Civil Procedure (made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure).[1] Having heard the parties' oral arguments, taken judicial notice of the dockets both in this adversary proceeding and in Stirlen's bankruptcy case, and reviewed all relevant documents and transcripts, and for the reasons set forth below, the Court denies Karras's motions to dismiss.

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

1

**BACKGROUND**

On Karras's motions to dismiss under Rules 12(b)(1) and 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the counterclaim. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015); *Gierum v. Glick (In re Glick)*, 568 B.K. 634, 641 (Bankr. N.D. Ill. 2017). In addition to considering these allegations, the Court takes judicial notice of the contents of the dockets both in this adversary proceeding and in Stirlen's bankruptcy case. *See In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2001). The material facts, gleaned from the counterclaim and other relevant documents, are as follows.

In August 2014, Karras and Stirlen began negotiations in connection with Stirlen's acquisition of assets from Lycurgan, Inc., doing business as Ares Armor ("Lycurgan"), a California corporation owned and controlled by Karras. (*See* Adv. Dkt. No. 100 ¶¶ 13, 15, 20.[2]) Lycurgan designed, manufactured, and sold guns and related components through internet-based sales to people who wanted to assemble their own firearms. (*Id.* ¶ 13; Tr. at 3:20-4:5.[3])

During the negotiations, Karras told Stirlen that in January 2014, he had caused his Nevada-based corporation Double A Industries, Inc. ("Double A") to file an application to trademark the name "Ares Armor" with the U.S. Patent and Trademark Office. (Adv. Dkt. No. 100 ¶ 19.) Accordingly, Karras said, the transfer of the name "Ares Armor" to a company to be established by Stirlen would not violate the intellectual property rights of any third parties. (*Id.*)

On September 24, 2014, Ares Defense Systems, Inc. ("Ares Defense"), a Florida-based company that designs, manufactures, and sells firearms and related components under the

---

[2] All references to the adversary docket ("Adv. Dkt.") are to Adversary No. 17 A 00424, and all references to the bankruptcy docket ("Bankr. Dkt.") are to Bankruptcy No. 17 B 06666.

[3] All transcript references ("Tr.") are to the transcript of the parties' oral arguments on September 3, 2019.

2

trademark "Ares," filed an extension with the U.S. Patent and Trademark Office to oppose Double A's trademark application. (*Id.* ¶¶ 23, 26.)

About three weeks later, on October 16, 2014, Stirlen formed Ares Armor, Inc. under the laws of California, in contemplation of the acquisition of assets from Lycurgan. (*Id.* ¶ 28.) He established the company in reliance on Karras's representation that the name "Ares Armor" was Lycurgan's intellectual property free and clear of any claims of infringement. (*Id.*)

On November 28, 2014, after ultimately agreeing to the essential terms of the acquisition, Karras and Stirlen caused an asset purchase agreement to be executed between Lycurgan and Stirlen's new corporation Ares Armor, Inc. (*Id.* ¶ 30.) Karras and Stirlen signed the asset purchase agreement not only as the president of each of their respective corporate entities, but also personally as guarantors. (*Id.* ¶¶ 31, 37, Ex. 4 at 9.) Karras also signed the agreement as the majority shareholder of Lycurgan. (*Id.* ¶ 31, Ex. 4 at 9.) Under paragraph 32 of the agreement, Stirlen unconditionally guaranteed Ares Armor, Inc.'s performance, and Karras did the same for the obligations of Lycurgan. (*Id.*, Ex. 4 at 7.)

Following consummation of the sale, Stirlen began operating Ares Armor, Inc., and Karras was kept on as an employee. (*See* Tr. at 7:8-16; 8:3-6.)

On December 22, 2014, Ares Defense filed a notice with the U.S. Patent and Trademark Office to oppose the registration of the "Ares Armor" trademark by Double A. (Adv. Dkt. No. 100 ¶ 38.) Subsequently, on July 8, 2015, Ares Defense brought an action for trademark infringement in the United States District Court for the Middle District of Florida against Ares Armor, Inc., Stirlen, Lycurgan, Karras, and others. (*Id.* ¶ 39.)

About nine months later, on March 25, 2016, Ares Armor, Inc. and Stirlen entered into a settlement agreement with Ares Defense to resolve the trademark infringement suit. (*Id.* ¶ 50.)

Pursuant to the settlement, Ares Armor, Inc. agreed to: (1) change the name of its business to American Weapons Components, Inc. ("AWC"), and (2) pay Ares Defense $24,375. (*Id.* ¶ 51.) The new name, and a corresponding change to the company's website address, caused both online traffic and sales to plummet. (*Id.* ¶¶ 52-54, 56.) Neither traffic nor sales ever rebounded. (*Id.* ¶ 58.)

Nearly one year later, on March 5, 2017, Stirlen filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Bankr. Dkt. No. 1.) Subsequently, on December 4, 2018, the case was converted on the Court's own motion to a case under chapter 7. (Bankr. Dkt. No. 254.)

On June 14, 2017, about three months after the bankruptcy had commenced, Lycurgan filed a claim in the case in the amount of $3,900,000, asserting, among other things, that $600,000 of the claim was secured by a lien on property in which the bankruptcy estate had an interest. (*See* Bankr. Claims Register, Claim No. 15.) On September 6, 2017, Stirlen filed an objection to the claim to the extent that it asserted a secured interest in his assets. (Bankr. Dkt. No. 121.) After conducting a one-day evidentiary hearing, the Court sustained Stirlen's objection on January 9, 2018. (Bankr. Dkt. No. 177.) Because no further objections were subsequently filed, Lycurgan has an allowed unsecured claim of $3,900,000 in Stirlen's bankruptcy case. (*See id.*)

After disputes arose over the agreement that resulted in the acquisition of Lycurgan's trade name and related business assets, as well as certain allegedly tortious acts by Stirlen in his individual capacity, Karras filed an adversary complaint against Stirlen on March 14, 2018. (Adv. Dkt. No. 60.[4]) In the complaint, Karras alleges that Stirlen fraudulently induced him to enter into

---

[4] The complaint at Docket No. 60 is Karras's second amended complaint. He filed the initial adversary complaint on August 11, 2017 (Adv. Dkt. No. 1), an amended complaint on September 1, 2017 (Adv. Dkt. No. 10), and, after the Court granted in part Stirlen's motion to dismiss (Adv. Dkt. No. 53), the second amended complaint on March 14, 2018 (Adv. Dkt. No. 60). Although the Court subsequently entered an order granting in part Stirlen's motion to dismiss that complaint (Adv. Dkt. No. 76), Karras did not file another amendment. Thus, the counts that remain in the second amended complaint are those at issue in the adversary proceeding.

the agreement, to become an employee of Stirlen's business, and to sign a non-compete agreement. Karras also asserts that Stirlen used Karras's credit card without permission and failed to pay the charges that were incurred, causing the account to go into default. He further contends that Stirlen committed a number of intentional torts, including defamation, invasion of privacy, and retaliatory termination. Accordingly, Karras seeks a determination of nondischargeability pursuant to §§ 523(a)(2)(A), (a)(4), and (a)(6) of the Bankruptcy Code.

On June 26, 2019, in response to Karras's complaint, Stirlen filed what he styled a counterclaim in which he asserts that he is entitled to set off the alleged debts that he owes to Karras pursuant to paragraph 16 of the asset purchase agreement. (*See* Adv. Dkt. No. 100 ¶ 32(b), Ex. 4 at 4-5.) He argues, *inter alia*, that he has a right to do so because Lycurgan and Karras breached both the asset purchase agreement and the warranty bill of sale, failed to indemnify Ares Armor, Inc. for the infringement of the "Ares" trademark, and caused Ares Armor, Inc. and Stirlen to incur significant financial losses. Stirlen suggests that Karras is responsible for these acts either directly or as a guarantor.

On July 24, 2019, Karras filed two motions to dismiss Stirlen's counterclaim under subsections (b)(1) and (b)(6) of Rule 12 of the Federal Rules of Civil Procedure. (Adv. Dkt. Nos. 103 & 104.)  After the motions were fully briefed, the Court took the matters under advisement. Having reviewed the relevant documents, the arguments of the parties, and the applicable case law, the Court is now ready to rule.

## DISCUSSION

### 1. Karras's Motion to Dismiss Stirlen's Counterclaim Under Rule 12(b)(6)

On a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences from the well-pleaded facts in favor of the non-movant. *See Killingsworth v. HSBC Bank Nev., N.A.*, 507

F.3d 614, 618 (7th Cir. 2007); *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003). Modern rules of pleading require, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that the plaintiff must include more than "unadorned, the defendant-unlawfully-harmed-me accusation[s]"). Legal conclusions may help to structure a complaint, but they must be supported by factual allegations. *Iqbal*, 556 U.S. at 678-79.

A complaint will be dismissed under Rule 12(b)(6) unless it clears "two easy-to-clear hurdles." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must provide fair notice of the claim and the grounds upon which it rests so that a defendant can prepare his defense. *Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006). Second, the allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Concentra Health Servs.*, 496 F.3d at 776 (quoting *Twombly*); *see also Killingsworth,* 507 F.3d at 618 (noting that the plaintiff must plead "'enough facts to state a claim to relief that is plausible on its face'"). Plausibility means that the allegations in a complaint permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Accordingly, a plaintiff's complaint must include allegations about each element of the cause of action, or at least allegations from which a court can draw reasonable inferences about each element. *Twombly*, 550 U.S. at 562-63.

"Affirmative defenses are pleadings and, therefore, are subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller Fin., Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir. 1989). "While the Seventh Circuit has not addressed whether the *Twombly–Iqbal* standard applies to affirmative defenses, judges in this district have generally found these requirements to apply." *Edwards v. Mack Trucks, Inc.*, 310 F.R.D. 382, 386 (N.D. Ill. 2015) (citing cases); *see also* 5 Charles Alan Wright et al., *Federal Practice and Procedure* § 1274 (3d ed. 2019) (discussing the disagreement among federal courts concerning the applicability of *Twombly* and *Iqbal* to affirmative defenses). This is true, in part, because "affirmative defenses must withstand a 12(b)(6) challenge, the analysis of which now incorporates the plausibility requirement." *Behn v. Kiewit Infrastructure Co.*, No. 17 C 5241, 2018 WL 5776293, at *1 (N.D. Ill. Nov. 2, 2018) (internal citation omitted). "As a practical matter, however, affirmative defenses rarely will be as detailed as a complaint (or a counterclaim); nor do they need to be in most cases to provide sufficient notice of the defense asserted." *Dorsey v. Ghosh*, No. 13-cv-05747, 2015 WL 3524911, at *4 (N.D. Ill. June 3, 2015). This Court agrees with the majority of judges in the Northern District of Illinois that affirmative defenses are also subject to the requirements articulated in the *Twombly–Iqbal* cases. *But see Acuity Optical Labs., Inc. v. Davis Vision, Inc.*, No. 14-3231, 2014 WL 5900994, at *2 (C.D. Ill. Nov. 13, 2014) (noting that "allegations that were sufficient before *Twombly* and *Iqbal* will likely still be sufficient" when pleading affirmative defenses).

### A. Properly Pleading Setoff Rights

As a preliminary matter, Stirlen pleads by way of a counterclaim a right to set off the allegedly nondischargeable debt that he owes to Karras. Although "[m]odern rules of civil procedure have significantly relaxed the procedural differences among counterclaim, recoupment and setoff," 5 *Collier on Bankruptcy* ¶ 553.11 (Richard Levin & Henry J. Sommer eds., 16th ed.),

Stirlen's use of a counterclaim here is improper. A setoff is an affirmative defense under the Federal Rules of Civil Procedure. *See Beloit Corp. v. C3 Datatec, Inc.*, No. 95-3309, 1996 WL 102436, at *1-2 (7th Cir. Mar. 1, 1996); *Paloian v. Geneva Seal, Inc. (In re Canopy Fin., Inc.)*, 471 B.R. 218, 222-23 (N.D. Ill. 2012); *Trs. of the Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Darwan*, No. 01 C 2458, 2006 WL 897942, at *4 n.5 (N.D. Ill. Mar. 31, 2006), *aff'd sub nom. Trs. of Chi. Painters & Decorators Pension, Health & Welfare, & Deferred Sav. Plan Tr. Funds v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782 (7th Cir. 2007); *Oxford Commercial Funding, LLC. v. Cargill, Inc.*, No. 00 C 4996, 2002 WL 31455989, at *7 (N.D. Ill. Oct. 31, 2002). *But see, e.g., Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, No. 07-CV-1394, 2009 WL 1329217, at *4 (N.D. Ill. May 13, 2009) (finding that a setoff is not properly pleaded as an affirmative defense), *aff'd*, 692 F.3d 580 (7th Cir. 2012). This characterization is not, however, a mere peculiarity of the federal procedural rules. A setoff against a cross-demand for money,[5] for example, is also an affirmative defense under the laws of California. *See City of Stockton v. Superior Court*, 171 P.3d 20, 31 (Cal. 2007) (citing cases); *Constr. Protective Services, Inc. v. TIG Specialty Ins. Co.*, 57 P.3d 372, 377 (Cal. 2002).

Stirlen's erroneous designation is not fatal, however, to the survival of his setoff defense. "If a party mistakenly designates a defense as a counterclaim, or a counterclaim as a defense, the court must, if justice requires, treat the pleading as though it were correctly designated, and may impose terms for doing so." Fed. R. Civ. P. 8(c)(2); *see also* 5 Charles Alan Wright & Arthur R.

---

[5] The phrase "cross-demand" does not have the same connotation as the term "crossclaim" under the Federal Rules of Civil Procedure because California has abolished the counterclaim. *See ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.*, 5 Cal. App. 5th 69, 86-87 (2016) (discussing the history of California's pleading rules and observing that under the state's current rules a "defendant or cross-defendant [may] assert in [a] cross-complaint '[a]ny cause of action against any of the parties who filed the complaint or cross-complaint against him [or her],' regardless of whether such claims were related to those upon which the suit was brought"). "Any cause of action that formerly was asserted by a counterclaim [must now] be asserted by a cross-complaint" in California. *See* Cal. Code Civ. Proc. § 428.80; *see also id.* §§ 431.30, 431.70.

Miller, *Federal Practice and Procedure* § 1275 (2d ed. 1990) ("Inasmuch as it is not clear whether set-offs and recoupments should be viewed as defenses or counterclaims, the courts, by invoking the misdesignation provision in Rule 8(c), should treat [a] matter of this type as if it had been properly designated by the defendant, and should not penalize improper labelling."). Accordingly, the Court will disregard the incorrect label, *see Reiter v. Cooper*, 507 U.S. 258, 263 (1993), and redesignate Stirlen's counterclaim as an affirmative defense without miring this proceeding in unnecessary rounds of repleading. *See BJB Elec., L.P. v. N. Cont'l Enters., Inc.*, No. 09 C 3022, 2012 WL 3757477, at *10 (N.D. Ill. Aug. 28, 2012); *Penn Mut. Life Ins. Co. v. GreatBanc Tr. Co.*, No. 09 C 6129, 2010 WL 2928054, at *5 (N.D. Ill. July 21, 2010); *Oppenheimer-Palmieri Fund, L.P. v. Peat Marwick Main & Co. (In re Crazy Eddie Sec. Litig.)*, 802 F. Supp. 804, 818 (E.D.N.Y. 1992). As discussed in the foregoing section, the requirements articulated in the *Twombly–Iqbal* cases govern the outcome of Karras's Rule 12(b)(6) motion.

### B. Asserting Setoff Rights in the Context of Bankruptcy

Setoff rights have evolved to avoid "'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). These rights are largely unaffected, however, by the bankruptcy process. *See* 11 U.S.C. § 553(a) (providing that "this title [generally] does not affect any right of a creditor to offset a mutual debt"); *see also Boston & Maine Corp. v. Chi. Pac. Corp.*, 785 F.2d 562, 565 (7th Cir. 1986) (observing that "[s]etoffs are recognized in state law as contractual rights independent of bankruptcy"). Any right to a setoff must first exist under applicable non-bankruptcy law. *See Strumpf*, 516 U.S. at 18 (explaining that the Bankruptcy Code "provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy"). Thus, "the

threshold question in every case involving an asserted right of setoff is the source and validity of the underlying right." *See* 5 *Collier* ¶ 553.04.

"[T]he precise language of § 553(a) allows [only] a creditor to offset debts owed by that creditor against monies owed by the debtor." *Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 939 (Bankr. N.D. Ill. 1991); *see also In re Braniff Airways, Inc.*, 42 B.R. 443, 447 (Bankr. N.D. Tex. 1984). The reported decisions interpreting § 553, however, have nearly unanimously "held (1) that, generally, claims asserted by a debtor under the Bankruptcy Code are not subject to the limitations applicable to a creditor's right to a bankruptcy setoff or recoupment, and (2) that, specifically, a debtor's counterclaim against a creditor does not require mutuality in the sense of both claims arising prepetition." *In re ABC-NACO, Inc.*, 294 B.R. 832, 838 (Bankr. N.D. Ill. 2003) (collecting cases). These cases clarify that the limitations set forth in subsections (a) and (b) of § 553 "apply only to the special substantive claim of setoff or recoupment available to a *creditor* in bankruptcy." *Id*. at 837. Bankruptcy courts, however, have recognized a debtor's right to assert setoff as a defense under § 558. *Super Stop Petroleum, Inc. v. Clark Retail Enters., Inc. (In re Clark Retail Enters., Inc.)*, 308 B.R. 869, 896 (Bankr. N.D. Ill. 2004); *Martin*, 130 B.R. at 939. As discussed above, the Court has redesignated Stirlen's counterclaim as a defense.

The separate purposes of § 553 and § 558 elucidate the distinction between setoff rights asserted by debtors and those asserted by creditors. The filing of a bankruptcy petition creates a bankruptcy estate composed of the debtor's legal or equitable interests in property, *see* § 541(a), and empowers the estate's representative to assert the defenses available to the debtor, s*ee generally* § 558. This dispossesses a debtor of his causes of action but not his defenses. *See* 5 *Collier* ¶ 558.01(1)(a). The limitations set forth in § 553 prevent a pre-petition creditor from unreasonably reaching the estate or the debtor's post-petition assets to the detriment of other

creditors or the debtor himself. *See Boston & Maine Corp.*, 785 F.2d at 565. The purpose that § 553 advances therefore has no relevance to a setoff defense raised by a debtor. Instead, permitting both the estate's representative and the debtor to assert defenses helps preserve the estate, *see* 5 *Collier* ¶ 558.01(1)(a), and promotes the Bankruptcy Code's goal of ensuring a fair distribution of the estate's assets among creditors. *Cf. Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) (discussing the "equal distribution objective underlying the Bankruptcy Code" in the context of priority claims).

Paragraph 40 of the asset purchase agreement provides that the laws of California shall govern its interpretation. (*See* Adv. Dkt. No. 100, Ex. 4 at 8.) Thus, Stirlen's setoff defense is not limited by the constraints of § 553 but exists only to the extent that California law recognizes it. *See Martin*, 130 B.R. at 939.[6]

### C. Asserting Setoff Rights Under California Law

In his Rule 12(b)(6) motion, Karras argues that Stirlen's setoff defense fails because Karras supposedly has no personal liability under the asset purchase agreement since he executed the agreement as an agent of Lycurgan. (*See* Adv. Dkt. No 103-1 at 10.) This argument is without merit.

Karras and Stirlen signed the asset purchase agreement not only as the president of each of their respective corporate entities, but also personally as guarantors. (Adv. Dkt. No. 100 ¶¶ 31, 37, Ex. 4 at 9.) Under paragraph 32 of the agreement, Stirlen unconditionally guaranteed Ares Armor,

---

[6] Some case law supports the notion that equitable considerations should be factored into a court's decision to allow an asserted setoff right to go forward; however, the Seventh Circuit "has deprecated the use of such considerations to answer setoff questions in bankruptcy." *Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1441 (7th Cir. 1993); *see also United States v. Arkinson (In re Cascade Rds., Inc.)*, 34 F.3d 756, 764 n.9 (9th Cir. 1994) (observing that a "bankruptcy court possesses no equitable authority to deny setoffs").

Inc.'s performance, and Karras did the same for Lycurgan's obligations. (*Id.*, Ex. 4 at 7.) *See* Cal. Civ. Code § 2806 (explaining that a guarantor's obligation is presumptively unconditional[7]). Karras also signed the agreement as Lycurgan's majority shareholder. (Adv. Dkt. No. 100 ¶ 31, Ex. 4 at 9.)

The Supreme Court of California has determined that "since the liability of a surety is commensurate with that of the principal, where the principal is not liable on the obligation, neither is the guarantor." *U.S. Leasing Corp. v. duPont*, 444 P.2d 65, 75 (Cal. 1968); *see also* Cal. Civ. Code § 2810 (providing that the obligations of a guarantor cease where the principal's liability becomes extinguished by reason of a defense, unless the guarantor assumed liability with knowledge of such defense). From this determination emerges the general rule that a guarantor may raise any defense available to its principal. *See*, *e.g.*, *Flickinger v. Swedlow Eng'g Co.*, 289 P.2d 214, 218 (Cal. 1955). Such defenses exist in addition to any that the guarantor itself may possess. *Cates Constr., Inc. v. Talbot Partners*, 980 P.2d 407, 419 (Cal. 1999).

The reason for this rule is straightforward: "[A] surety's liability for an obligation is secondary to, and derivative of, the liability of the principal for that obligation." *W. Sec. Bank v. Superior Court*, 933 P.2d 507, 516 (Cal. 1997). Indeed, "[t]he obligation of a surety must be neither larger in amount nor in other respects more burdensome than that of the principal; and if in its terms it exceeds it, it is reducible in proportion to the principal obligation." Cal. Civ. Code § 2809. Here, Stirlen guaranteed the obligations of Ares Armor, Inc. under the asset purchase

---

[7] Although California's civil code and case law use the term "surety" or a declension thereof, the distinction between "surety" and "guarantor" has been abolished in California. *See* Cal. Civ. Code § 2787 (defining "surety" or "guarantor" as "one who promises to answer for the debt, default, or miscarriage of another, or hypothecates property as security therefor").

agreement and, now being sued in part on account of that guarantee, is entitled to assert any defense that would be available to Ares Armor, Inc., including its right to set off under the contract.[8]

Some of Karras's counts relate to Stirlen's actions in his individual capacity. For the reasons and precedent discussed above, however, this detail has no bearing on the outcome herein. *See*, *e.g.*, *United States v. Johnson (In re Johnson)*, 586 B.R. 449, 454 (N.D. Ill. 2018) (explaining that a "[s]etoff, unlike [a] recoupment, does not require the debts arise from the same transaction"); *Clark Retail Enters.*, 308 B.R. at 895 (observing that a "[s]etoff most commonly arises as a counterclaim or cross-claim demand interposed by a defendant against a plaintiff, originating from a transaction *extrinsic to* the plaintiff's cause of action") (emphasis added)); *see also ABC-NACO*, 294 B.R. at 837 (noting that the limitations in § 553 generally do not apply to setoff rights asserted by debtors). Karras's appeal to inapposite[9] and antiquated case law predating the current statutory schema governing guarantor relationships in California is unavailing.

---

[8] The relevant portion of paragraph 16 of the asset purchase agreement reads as follows:

> If the Seller or Majority Shareholder breach[es] any of [its] obligations, representations or warranties under this agreement, among its other legal remedies, the Buyer will have the right to offset any damages, costs, or losses, including reasonable [attorney's] fees and costs, incurred by it against the Seller Note and Seller Standby Note.

(Adv. Dkt. No. 100, Ex. 4 at 5.) The agreement defines "Majority Shareholder" as Karras, the "Buyer" as Ares Armor, Inc., and the "Seller" as Lycurgan. (*Id.* at 1-2.) The terms "offset" (as found in the agreement) and "setoff" are used synonymously under California law. *See McMillin Cos. v. Am. Safety Indem. Co.*, 233 Cal. App. 4th 518, 526 n.7 (2015).

[9] For example, Karras cites to *Merchants' National Bank of Los Angeles v. Clark-Parker Co.*, 9 P.2d 826, 828 (Cal. 1932), for the proposition that a person cannot assert a counterclaim existing in favor of another person. In that case, the Supreme Court of California *described* the ruling of another decision from 1885; in doing so, however, the court *expressly* declined to evaluate the veracity of that determination because it was of no relevance to the matter at issue. *Id*. Perhaps in this line of reasoning Karras means to advance the argument—though not properly denominated as such—that Stirlen's setoff is impermissible because it is triangular. *See generally In re Elcona Homes Corp.*, 863 F.2d 483, 486-88 (7th Cir. 1988). This type of setoff—which occurs when "A attempts to offset an obligation owed by B against B's debt to C"—is generally impermissible because of the mutuality requirement of § 553, *see* 5 *Collier* ¶ 553.03(3)(b)(i), which the Court already concluded does not apply to Stirlen. *See ABC-NACO*, 294 B.R. at 837-38. Such an argument therefore would have no bearing on Stirlen's setoff defense in this adversary proceeding.

**D. Asserting Setoff Rights as a Guarantor of a Suspended Corporation**

Finally, Karras contends that Stirlen's setoff defense should be dismissed because setoff may be asserted only by Stirlen's corporate principal. This argument is also without merit for the reasons previously discussed. Furthermore, it is predicated on the erroneous assertion that AWC (formerly known as Ares Armor, Inc.) is an active entity authorized under the laws of California to carry out business activities in its own name. Certain concurring testimony of Karras's counsel at oral argument confirms that he is confused as to AWC's status. (*See* Tr. at 10:10-17 ("[AWC] is still in existence. It is still a California corporation, active."); *see also id.* at 24:10-18; 38:9-10.)

The Federal Rules of Evidence apply in matters before a bankruptcy court. Fed. R. Evid. 1101; *see also* Fed. R. Bankr. P. 9017. Federal Rule of Evidence 201, in particular, empowers a bankruptcy judge to take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b)(2). AWC's corporate records and filings which are maintained by the California Secretary of State are proper subjects of judicial notice. *See*, *e.g.*, *City of Waukegan v. Bond Safeguard Ins. Co.*, No. 15 C 3007, 2015 WL 6870106, at *2 (N.D. Ill. Nov. 6, 2015); *Diaz v. Legion Pers., Inc.*, No. 10 C 1500, 2010 WL 3732768, at *2 (N.D. Ill. Sept. 15, 2010); *see also Rowe v. Gibson*, 798 F.3d 622, 628 (7th Cir. 2015) (supporting an expanded notion of proper judicial inquiry). Such judicially noticed facts may be considered in ruling on a motion to dismiss. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (explaining that taking judicial notice of matters of public record does not convert a motion to dismiss into a motion for summary judgment).

The Court takes judicial notice of the electronic records of corporations and other business entities maintained by the California Secretary of State at https://businesssearch.sos.ca.gov. These

records show that AWC's registration was suspended by the California Franchise Tax Board. The company therefore "may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes." *See Bourhis v. Lord*, 295 P.3d 895, 897 (Cal. 2013) (internal quotation omitted). Stirlen, however, as "a surety may [nonetheless] assert any defenses *or set-offs* the principal corporate debtor could have raised, had the corporation not been disabled and unable to defend itself in court by virtue of its suspension." *See Cadle Co. v. World Wide Hosp. Furniture, Inc.*, 144 Cal. App. 4th 504, 514 n.7 (2006) (emphasis added).[10]

### E. The Court's Ruling

The Court has examined the allegations in Stirlen's setoff defense in light of the foregoing and finds that his defense is pleaded sufficiently to survive a Rule 12(b)(6) motion under the plausibility standard articulated in the *Twombly* and *Iqbal* cases. Thus, Karras's motion to dismiss for failure to state a claim upon which relief can be granted is denied.

### 2. Karras's Motion to Dismiss Stirlen's Counterclaim Under Rule 12(b)(1)

Ordinarily a motion to dismiss for lack of subject matter jurisdiction is considered before a related motion to dismiss under Rule 12(b)(6) is analyzed. *See Rizzi v. Calumet City*, 11 F. Supp. 2d 994, 995 (N.D. Ill. 1998). Here, however, the Court examined Karras's Rule 12(b)(6) motion first because the arguments presented in the motions are substantially duplicative and the additional issues addressed in the Court's analysis of the 12(b)(6) motion are informative to the 12(b)(1) challenge. As to the latter, Karras presents three arguments in support of his request that

---

[10] Considering the statutes and other cases discussed herein, the Court predicts that the Supreme Court of California would rule as the *Cadle* court did on this issue. *See Sanchelima Int'l, Inc. v. Walker Stainless Equip. Co.*, 920 F.3d 1141, 1145 (7th Cir. 2019).

Stirlen's setoff defense be dismissed for lack of subject matter jurisdiction or standing. The Court addresses each of these arguments in turn.

First, Karras asserts that Stirlen has no standing to assert his putative right of setoff because that right became estate property when Stirlen filed for bankruptcy and only the chapter 7 trustee has standing to prosecute claims belonging to the estate. Although both notions are generally correct, they are irrelevant to the adjudication of these motions. As explained above, Stirlen may pursue his setoff right as an affirmative defense existing under California law pursuant to § 558 of the Bankruptcy Code.

Second, Karras suggests that the Court lacks jurisdiction to decide Stirlen's setoff defense because that defense constitutes a common law breach of contract claim, a non-core matter that cannot be adjudicated by this Court under *Stern v. Marshall. See generally* 564 U.S. 462 (2011). Neither this suggestion nor Stirlen's response that the compulsory nature of his counterclaim resolves the constitutional issues identified in *Stern* is well taken.[11] The parties' papers show that they lack a firm understanding of the holdings in *Stern* and its progeny.[12] "The heart of the *Stern* decision goes to a bankruptcy court's ability to render a final judgment, a matter that is not at issue today." *In re Containership Co. (TCC) A/S*, 466 B.R. 219, 233 (Bankr. S.D.N.Y. 2012); *see also Bush v. United States*, 939 F.3d 839, 843-47 (7th Cir. 2019) (comprehensively discussing the bankruptcy courts' jurisdiction). The Supreme Court expressly noted, moreover, that the scope of

---

[11] Indeed, the very counterclaim at issue in *Stern* was compulsory under the Federal Rules of Civil Procedure. *See Stern*, 564 U.S. at 497.

[12] For instance, the mere fact that Stirlen's setoff defense hinges on the laws of California is not, as Karras suggests, dispositive under *Stern*. Indeed, interpreting and applying the laws of the fifty states are daily tasks of the bankruptcy courts. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 540-49 (1994); *Butner v. United States*, 440 U.S. 48, 54-57 (1979) (discussing, *inter alia*, that the property interests addressed by bankruptcy courts are created and defined by state law); *see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 97 (1982) (White, J., dissenting) (observing that "the bankruptcy judge is constantly enmeshed in state-law issues").

*Stern* is "narrow" and "does not change all that much" with respect to "the division of labor" between the bankruptcy and district courts. *Stern*, 564 U.S. at 502-03. Thus, the jurisdictional limitation is not implicated because "[t]he ruling in *Stern* was . . . limited to the one specific type of core proceeding involved in that dispute," *see NextGear Capital, Inc. v. Rifai (In re Rifai)*, 604 B.R. 277, 304 (Bankr. S.D. Tex. 2019), and a chapter 7 debtor's affirmative defense to a nondischargeability action is not a "counterclaim[] by the estate against persons filing claims against the estate," 28 U.S.C. § 157(b)(2)(C); *see also In re AFY, Inc.*, 461 B.R. 541, 547-48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional.").

The Court's disposition of this motion would be unchanged even if Stirlen's defense were "wholly within the scope of the *Stern* decision." *See Gecker v. Flynn (In re Emerald Casino, Inc.)*, 459 B.R. 298, 300 (Bankr. N.D. Ill. 2011). An action brought pursuant to § 523 is a statutorily-designated core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and "stems from the bankruptcy itself." *Stern*, 564 U.S. at 499. It follows that an affirmative defense to such an action is likewise a core proceeding over which the Court has constitutional authority. *See Beskin v. Bank of N.Y. Mellon (In re Perrow)*, 498 B.R. 560, 567 (Bankr. W.D. Va. 2013); *see also Newman v. Associated Bank, N.A. (In re World Mktg. Chi., LLC)*, 574 B.R. 670, 673-74. The Supreme Court has clarified, moreover, that when a bankruptcy court confronts a matter within its statutory jurisdiction that it cannot constitutionally resolve with a final judgment under *Stern*, "[t]he bankruptcy court *should* hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 36 (2014) (emphasis added). Finally, even if the Court does not possess plenary authority over

Stirlen's setoff defense, resolution of the matter would fall within the Court's ancillary jurisdiction. *See Bush*, 939 F.3d at 846-47.[13] Thus, the setoff should not be dismissed.

Third, Karras contends that the Court has no jurisdiction over the setoff defense because: (1) Stirlen cannot assert a setoff belonging to AWC, and (2) since he is not a party to the asset purchase agreement, Stirlen cannot bring an action in connection with that agreement in his own name. The Court has already addressed the first part of this argument in its analysis of California law and relevant provisions of the Bankruptcy Code. The second part of the argument raises a question that is not relevant to this adversary proceeding: whether Stirlen can prosecute his setoff independent of his corporate principal and attain affirmative relief in his own name in a state court (or elsewhere). Rather, the relevant issue is whether Stirlen's setoff may be asserted as a defense under § 558 of the Bankruptcy Code, and the Court has already concluded that he can.

Accordingly, Karras's motion to dismiss for lack of subject matter jurisdiction is denied.

## CONCLUSION

For the foregoing reasons, the Court hereby denies Karras's motions to dismiss Stirlen's counterclaim and sets this adversary proceeding for status on May 20, 2020 at 1:30 p.m.

---

[13] The Court further notes that a bankruptcy court's "related to" jurisdiction is assessed at the outset of a dispute, *see Bush*, 939 F.3d at 846-47, and that Stirlen was a debtor-in-possession when this adversary proceeding was commenced. Any residual concerns about the propriety of Stirlen's setoff are allayed by recalling that Lycurgan has an allowed proof of claim in the main bankruptcy case, which Stirlen contested only to the extent that the claim asserted a secured interest in his assets. As such, Stirlen appears to be asserting setoff as a defense to the requested determination that his debts to Karras are nondischargeable rather than seeking affirmative recovery. *See* 1 *Collier* ¶ 3.02[3][a] ("What probably follows from *Stern* is that an estate's attempt to recover an affirmative judgment on the breach of warranty claim (damages suffered by the debtor exceed the amount of the seller's claim) is an example of the 'judicial Power of the United States.' The fact that the evidence necessary to have the claim disallowed is the same as the evidence necessary to support an affirmative judgment might take the latter out from under the rationale of *Stern*."); *see also TIG Specialty Ins. Co.*, 57 P.3d at 375 (noting that a "setoff [was] limited to defeating the plaintiff's claim" under California law); *cf. Martin*, 130 B.R. at 939 (determining that a chapter 7 debtor-defendant was entitled to assert a setoff as a defense to a § 523 adversary proceeding).

**DATE:** April 30, 2020                  **ENTER:**

*/s/ Janet S. Baer*

_____

JANET S. BAER
United States Bankruptcy Judge